This is an appeal by petitioner-appellant Phoenix Bond 
Indemnity Company (Phoenix) from a trial court order in a cause involving an admitted error in the redemption date in a real estate tax foreclosure proceeding. The parties and their interests are as follows.
The applicant-appellee is Edward J. Rosewell, treasurer andex officio collector of Cook County. A deputy clerk of the Cook County clerk's office entered an erroneous redemption date in the judgment record purporting to extend the redemption date from November 14, 1983, to February 15, 1984, for a parcel of real estate described by permanent index number 03-29-336-008. The property had been forfeited to the State of Illinois and subsequently was sold to Phoenix for delinquent 1979 real estate taxes.
The respondent-appellee is the Federal Deposit Insurance Company (FDIC), which is the assignee in liquidation of the legal owner of the land trust holding the involved property. FDIC is the attempted redeemer of the property.
The order appealed from (1) granted Rosewell's motion to dismiss Phoenix's petition for a tax deed; (2) granted FDIC's motion for summary judgment; and (3) denied Phoenix's cross-motion for summary judgment. The practical effect of the order is to permit FDIC to redeem the property on the basis of the erroneous extension date. Although Rosewell's motion was filed under section 2-615 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2-615), the trial court treated it as the "functional equivalent" of a section 2-619 summary judgment motion. (Ill. Rev. Stat. 1983, ch. 110, par. 2-619(9).) The court held that Rosewell had standing and granted his motion to dismiss. The court granted FDIC's summary judgment motion on the grounds that there were no fact issues and on the basis of FDIC's reliance on a public record.
This cause arose out of the following undisputed facts.
On November 31, 1981, Phoenix purchased a parcel of real estate that had been forfeited to the State of Illinois at a 1979 annual tax sale. Phoenix's purchase was made pursuant to section 272 of the Illinois Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 753). Section *Page 300 
272 authorizes a party to purchase property forfeited for delinquent real estate taxes and special assessment, and also permits the redemption within specified time limits of property so purchased. Ill. Rev. Stat. 1981, ch. 120, par. 753(2).
Phoenix complied with procedures established by the Revenue Act. It sent notice of the sale date and of the expiration date of the extended period of redemption (November 14, 1983) to the owner of record, Ford City Bank and Trust Company, and other interested parties as required by the Revenue Act. (Ill. Rev. Stat. 1981, ch. 120, par. 719 et seq.) FDIC was not served with notice since it was neither an owner of record nor even known to Phoenix as having an interest in the property. However, the trustee of the land trust did forward a timely copy of the notice, with an expiration date of November 14, 1983, to FDIC.
On approximately October 6, 1983, a deputy county clerk, purportedly obeying a circuit court order in another but related proceeding, entered an extension in the judgment record from November 14, 1983, to February 15, 1984. The undisputed erroneous entry occurred concurrently with the extension of the redemption date for six other tax forfeiture purchases by Phoenix which had been indexed in the same sequence of numbers as the property involved in this appeal. The redemption date for those other six parcels was extended to February 15, 1984. The court order did not extend the redemption date for the property at issue.
Phoenix was without notice of the improper extension until November 15, 1983, the day after the expiration of the correct extension date, when Phoenix examined the judgment record for a possible redemption. At that same time, Phoenix learned that several estimates of redemption bearing the February 15 date had been sent by the county clerk's office to an unknown party. In fact, four estimates of redemption had been sent to FDIC. The first estimate, dated October 5, 1983, was prepared before the erroneous entry was made and listed the proper expiration date. Three subsequent estimates bearing the improper expiration date of February 15, 1984, were sent to FDIC on October 11, October 18, and November 10, respectively.
On November 15, the deputy clerk, at the request of and in the presence of counsel for Phoenix, "whited out" the incorrect date. On November 18, a deputy clerk, after an initial refusal, accepted FDIC's tendered redemption deposit and reinscribed the erroneous date of February 15, in the judgment record. Thereafter, Phoenix initiated proceedings to expunge FDIC's redemption and sought permission to file an application for a tax deed. *Page 301 
On appeal, Phoenix raises three issues. It argues that (1) an issue of fact exists as to whether FDIC relied on the erroneous expiration date since FDIC attached no counteraffidavits to its motion for summary judgment; (2) FDIC, as a matter of law, knowingly made its deposit for redemption after the expiration of the actual, legal redemption period; and (3) Rosewell has no standing to oppose its motion to expunge the redemption. FDIC counters with the argument that summary judgment was properly entered in its favor since there was no fact issue, and that FDIC was entitled to rely on the erroneous entry in a public record. FDIC claims that it did so rely in good faith, and further, that there is no harm to Phoenix since it will recover the amount paid plus interest if FDIC redeems the property. In other words, both parties will be made whole.
As to the first issue, Phoenix asserts that since FDIC received one estimate of redemption bearing the correct expiration date from the county clerk, the ambiguity created by three subsequent estimates with a different and later expiration date placed an affirmative duty on FDIC to examine the tax-deed file. Furthermore, Phoenix points out that the copy of the original notice and an FDIC internal memo indicated that the period of redemption expired on November 14, 1983. Phoenix contends that these circumstances raise an issue of fact as to FDIC's reliance. Furthermore, Phoenix argues that entry of summary judgment was improper because FDIC did not submit counteraffidavits disputing Phoenix's affidavit and supporting documents. Phoenix's attached papers included excerpts from the deposition of an FDIC employee and an FDIC internal memo, both of which indicated a November 14 expiration date, the statutory notices served, and copies of the estimates of redemption ordered by FDIC.
Secondly, Phoenix contends that the redemption was not exercised in conformity with the statute and approval of the FDIC redemption would create a right where none existed. In other words, court approval would give the county clerk the unilateral right to extend redemptions in violation of the Revenue Act.
Lastly, Phoenix asserts that Rosewell lacks standing because, as tax collector, he has no direct interest in the expungement of the redemption. Phoenix's initial claim sought no relief from Rosewell; instead it requested an order directing the county clerk to issue a tax deed.
• 1 We first note that Phoenix's argument that summary judgment was improper because FDIC's motion was not accompanied by affidavits is without merit. The only affidavit in the record is that of counsel for Phoenix which is attached to its motion to expunge and *Page 302 
which merely sets out the facts underlying the mistake made by the county clerk's office. Mere allegations that there is a genuine issue of material fact, without supporting documentation, do not preclude summary judgment. (Illinois Valley MineralsCorp. v. Royal-Globe Insurance Co. (1979), 70 Ill. App.3d 296, 299, 388 N.E.2d 253, 256.) A court is to determine the existence or absence of material fact from the affidavits, depositions, admissions, exhibits, and pleadings in the case. Crist v. DebronCorp. (1981), 96 Ill. App.3d 668, 672, 421 N.E.2d 997, 1000.
• 2 The record reveals that a mistake in extending the redemption date to February 15, 1984, was made by a clerk on or about October 6, 1983. All of the parties' exhibits show that FDIC had notice, prior to October 6, that the redemption period expired November 14, 1983. After that date, FDIC obtained three more estimates of redemption from the county clerk, and a tax search report from Chicago Title Insurance Company — all showing an expiration date of February 15. Furthermore, in its verified response to Phoenix's petition to expunge redemption, FDIC set forth an affirmative defense that it reviewed and relied upon the tax, judgment, sale, redemption and forfeiture record in the county clerk's office in ascertaining the expiration date. In its reply to the affirmative defense, Phoenix states "that the FDIC's reliance on exhibits A, B and C were at its peril and did not create any legal rights." In effect, this is an admission by Phoenix that FDIC did rely on the erroneous entry. (See Ill. Rev. Stat. 1983, ch. 110, par. 2-610(b).) It is therefore apparent from the face of the pleadings that there is no question of fact as to reliance so as to preclude summary judgment.
However, even if there was reliance in fact, Phoenix contends that as a matter of law, FDIC was not entitled to rely on the erroneous date. FDIC cites Jackson Park Hospital Co. v.Courtney (1936), 364 Ill. 497, 501, 4 N.E.2d 864, 866, for the proposition that a third party had a right to rely on information provided by the judgment record. Phoenix argues that two later cases have narrowed the Jackson Park holding, and cites FormanRealty Corp. v. Brenza (1957), 11 Ill.2d 531, 144 N.E.2d 623, and Thornton, Ltd. v. Rosewell (1978), 72 Ill.2d 399,381 N.E.2d 249. All three of these cases involved erroneous entries by the county clerk's office. Phoenix interprets Forman as applying only to innocent purchasers of real estate, and that other purchasers should conduct a more extensive search of the public records, such as the warrant book. However, we note that the Forman court was concerned with a superior tax lien being divested through changes of ownership where the new ownership had the same offices *Page 303 
and officers as the predecessor which defaulted on the taxes. (Forman Realty Corp. v. Brenza (1957), 11 Ill.2d 531, 538-39,144 N.E.2d 623, 627-28.) The court in Forman was reluctant to extend Jackson Park because to do so would deprive the county of revenue to which it was entitled. 11 Ill.2d 531, 539,144 N.E.2d 623, 627.
Similarly, the court in Thornton, Ltd. v. Rosewell (1978),72 Ill.2d 399, 381 N.E.2d 249, considered the extent of an examination of the tax records relevant only in a balancing of the equities between the taxing body and the tax purchaser, not between a tax purchaser and a redeemer. (72 Ill.2d 399, 404,381 N.E.2d 249, 251.) The court would not apply the Jackson Park
rationale to protect a tax purchaser who had only completed the first step in a two-step tax sale, noting that if, because of the error, the tax purchaser did not wish to complete the sale, the county could refund the amount already paid. As a result, both parties would be returned to their respective original positions, thus permitting the county to once again sell the property for delinquent taxes. (72 Ill.2d 399, 406, 381 N.E.2d 249, 252-53.) The court concluded that an official's mistake should not deprive a taxing body of the right to public revenues, and that the application of Jackson Park would work an inequity upon the county. 72 Ill.2d 399, 405, 381 N.E.2d 249, 252.
• 3 In the present case, FDIC relied to its detriment on the judgment record. If it is permitted to redeem the property, the county will not lose any tax revenue to which it is entitled since the taxes have already been paid. It has long been settled that Illinois law favors redemption and unless injury results to the purchaser at the sale, a liberal construction will be given to redemption laws. (Franzen v. Donichy (1956), 9 Ill.2d 382, 387, 137 N.E.2d 825, 828.) And, the mere failure of a tax certificate holder to get a deed does not injure him since the purchaser recovers the amount paid from the county. (In reApplication of County Treasurer (1973), 16 Ill. App.3d 385, 389,306 N.E.2d 743, 747.) Moreover, the right of a purchaser to get a deed is subservient to the right of the owner or interested party in the property to redeem. (In re Application of Du Page CountyCollector (1981), 98 Ill. App.3d 950, 952, 424 N.E.2d 1204, 1207.) Our United States Supreme Court has stated that the right to redeem is a substantial right, and when the exercise of that right is prevented as a result of official mistake, a court of equity has a duty to intervene. Martin v. Barbour (1891), 140 U.S. 634, 646, 35 L.Ed. 546, 550, 11 S.Ct. 944, 949.
• 4 Illinois courts also consider the right of redemption to be a substantial right. It is important that anyone possessing the right of *Page 304 
redemption should not lose that right by mistake or misinterpretation. (Van Fleet v. Van Fleet (1984), 126 Ill. App.3d 448, 453, 467 N.E.2d 592, 596.) Applying the above principles of law to the case at bar, it is apparent that a court may properly exercise its equitable powers and allow redemption even after the statutory period has expired in cases where redemption may have been precluded due to fraud or mistake on the part of the purchaser or public official. Mutual Life InsuranceCo. v. Chambers (1980), 88 Ill. App.3d 952, 957, 410 N.E.2d 962, 966.
The record shows that an undisputed mistake was made by a public official and that FDIC, in good faith, relied on that mistake. The fact that FDIC became aware of an ambiguity after October 6, after which it ordered three subsequent estimates of redemption in addition to checking the judgment record and requesting a title search, is not sufficient to overcome its substantial right to redeem, absent any facts showing injury to Phoenix or the county, or facts tending to show bad faith reliance by FDIC.
• 5 Accordingly, since the record indicates that there is no genuine issue of fact and in light of the policy of construing redemption laws liberally, the circumstances of this case compel us to affirm the trial court's order of summary judgment for FDIC so that equity is done.
• 6 In response to Phoenix's third issue regarding Rosewell's standing to move to dismiss its petition for a tax deed, Rosewell alleges standing on the basis of (1) his interest as collector in ensuring a valid redemption; and (2) his direct interest as trustee of the indemnity fund from which reimbursement would be forthcoming if FDIC could not redeem the property. We agree that these interests do establish standing. However, even if Rosewell had no standing, the error would be harmless in light of our foregoing opinion.
Our affirmance of the trial court's ruling does not act as tacit approval of the unilateral extension of redemption periods by county clerk employees. We are only applying the law to equitably untangle the results of such an act. As stated by the parties, the propriety of the erroneous extension of time is presently under consideration in a separate cause of action in a lower court.
Affirmed.
SULLIVAN, P.J., and PINCHAM, J., concur. *Page 305